OPINION
Appellant, Julie Logsdon, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, placing her daughter, Teslya King, in the permanent custody of the Butler County Children Services Board ("BCCSB").
Teslya was born on February 9, 1996. Her father is unknown. After her birth, Julie married Scott Logsdon, and the couple lived together in Butler County, Ohio. BCCSB received numerous reports regarding bruises and suspected injuries to Teslya, but, because the causes of these could not be confirmed, no action was taken. There were also allegations that Teslya was not being properly cared for or fed. On October 22, 1997, BCCSB removed Teslya from Julie's care due to a broken leg. Julie and Scott provided multiple, often conflicting, stories about how Teslya's leg was broken.
That same day, BCCSB filed a complaint alleging that Teslya was a neglected, dependent, and abused child. The trial court granted BCCSB temporary custody of Teslya pursuant to an ex parte
order. On October 27, 1997, a shelter care hearing was held, at which time BCCSB's temporary custody of Teslya was continued, and Scott was ordered not to have any contact with Teslya. An adjudication hearing was held on February 9, 1998, and the trial court found Teslya was a dependent child. The neglect and abuse allegations were continued pursuant to the parties' agreement.
A case plan was developed to reunify Teslya with Julie. The case plan included counseling, substance abuse and psychological assessments, and parenting classes for Julie and Scott. Julie and Scott were also granted visitation with Teslya. In time, the visitation was increased to a five hour visit, and Teslya was allowed to stay overnight with Julie on two occasions.
Julie was dropped from parenting classes due to chronic absences and a lack of interest. The psychological assessments conducted by Dr. William Walters of the Children's Diagnostic Center indicated that Julie would require substantial long term counseling and education before she could adequately and safely care for Teslya. He was concerned that Julie was too passive and would not protect Teslya from abuse by others.
Julie and Scott's relationship is problematic. They have a history of break-ups and reunions. At the time of Dr. Walter's second evaluation of Julie and Scott, they presented very different versions of their relationship. By that time, they had separated and were living in separate housing. It was at this time that Julie was allowed the overnight visitations with Teslya, on the condition that she not have anyone else staying in the house. Both times, there were others staying at her house, and Julie was found to be in contempt of court. By the end of the present proceedings, Julie and Scott had reunited.
Teslya's conduct suggests significant behavioral problems. Soon after being placed with her foster family, she began demonstrating "sexualized" behavior in which she would have simulated sexual intercourse, "humping" her pillow or doll, a sign of possible sexual abuse. Teslya's foster mother, Kathy Gibbs, sought help from the Therapeutic Inter-Agency Program ("TIP"), and Teslya's behavior has been modified so that she engages in such behavior less often, for shorter periods of time, and in the privacy of her own room. Teslya would aggressively engage in this behavior after visiting with Julie and Scott. She also attempted simulated oral intercourse with a foster-sibling and would display aggressive behavior towards her foster mother after visitations.
The trial court held numerous review hearings in which it received progress reports from the parties on the reunification of Teslya and Julie. On May 20, 1999, BCCSB filed a motion for permanent custody. On September 7, 1999, the trial court began a lengthy permanent custody hearing, at which both Julie and Scott testified. Kathy Gibbs also testified, as well as Dr. Walters, Sheryl Ripley, the BCCSB social worker involved in the case, and Jane Sites, the TIP official who worked with Teslya. On October 13, 1999, the trial court filed its entry, finding by clear and convincing evidence that it was in Teslya's best interest to grant permanent custody to BCCSB and that Teslya could not be placed with Julie within a reasonable time. Julie's parental rights were terminated. Julie appeals, raising a single assignment of error:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 In her sole assignment of error, Julie contends that the evidence showed that it was in Teslya's best interest to be reunited with Julie. Julie argues that she has made progress in the case plan, demonstrating that she can adequately care for Teslya.
The juvenile court may grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. R.C. 2151.414(B) and (B)(1); In re EgbertChildren (1994), 99 Ohio App.3d 492, 495. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court deviated from the statutory criteria. See In re William S. (1996), 75 Ohio St.3d 95,99.
In determining the best interest of a child, R.C. 2151.414(D) provides that the juvenile court must consider all relevant factors, including but not limited to the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child, or through the child's guardian ad litem, with due regard for the maturity of the child;
The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 In addition to determining the child's best interest, the juvenile court must assess whether the child can be placed with either or both of the child's parents within a reasonable time. R.C. 2151.414(B)(1). In making its determination, the court is guided by the factors set forth in R.C. 2151.414(E), including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or mental neglect;
* * *
(12) Any other factor the court considers relevant.
 In making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the statutory factors are present, the trial court must find that the child cannot or should not be placed with the parent. R.C. 2151.414(E). See, also, In re William S., 75 Ohio St.3d at 98.
In the instant case, the trial court's detailed entry supports its conclusion that it was in Teslya's best interest to be placed in the permanent custody of BCCSB. The trial court found that it was unlikely that Julie and Teslya could be reunited in a reasonable time. By the time of the permanent custody hearing, Teslya had been living with her foster family for almost two years, or one half of her life. Her foster family expressed a willingness to adopt her, and the trial court found it likely that she could be adopted.
Julie and Scott had a demonstrably unstable relationship. There were serious concerns that Julie was not capable of providing a healthy, non-chaotic environment. She also had a history of not being able to express appropriate feelings or to assert herself and protect herself or others. Julie still associated with those who had sexually abused her as a child. She had not been receptive to parenting programs. She violated the conditions of the unsupervised overnight visitations by allowing others to stay in her home.
Dr. Walters testified that although Julie has made progress, she requires extensive education and counseling before she could safely care for Teslya. This treatment could take up to two years. Dr. Walters was concerned by the inconsistency of Julie's descriptions of her relationship with Scott, and the unstable nature of that relationship. These concerns were mirrored by Sheryl Ripley, who had worked on the case since Teslya's initial removal.
Jane Sites testified about Teslya's behavioral problems, indicating that she believed that Teslya may have been sexually abused. She testified that Teslya will require extensive counseling and treatment. Teslya may suffer emotional problems for her entire life, considering the severity of her behavior. Sites testified that Teslya must have a very stable and nurturing environment if she is to overcome these problems. Sites believed that Kathy Gibbs and her family could provide such an environment. Gibbs' testimony supported this conclusion. Gibbs clearly loves Teslya and is taking considerable efforts to provide Teslya with the family environment she requires.
The trial court felt that it was clear that Julie would not provide the stable environment Teslya needed within a reasonable time. Although a bond still existed between Teslya and Julie, and it would be traumatic in the short term to be separated from her mother, Teslya has developed bonds with her foster family. It is more important that Teslya now have a non-chaotic life.
The trial court correctly found by clear and convincing evidence that Julie could not be reunited with Teslya within a reasonable time. Clear and convincing evidence supported the trial court's finding that it was in Teslya's best interest to be placed in the permanent custody of BCCSB. The assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.